OPINION
OF THE JUSTICES OF THE SUPREME JUDICIAL COURT
GIVEN UNDER THE PROVISIONS OF SECTION 3
OF ARTICLE VI OF THE CONSTITUTION

\* \* \* \* \* \* \* \* \*

QUESTIONS PROPOUNDED BY THE SENATE IN AN ORDER
DATED APRIL 4, 1961

ANSWERED APRIL 21, 1961

SENATE ORDER PROPOUNDING QUESTIONS

STATE OF MAINE

In Senate, April 4, 1961

WHEREAS, it appears to the Senate of the One Hundredth Legislature that the following are important questions of law and the occasion is a solemn one, and

WHEREAS, there is pending before the Senate of the One Hundredth Legislature a bill (Senate Paper 497, Legislative Document 1496, a new draft of Senate Paper 283, Legislative Document 884), entitled AN ACT Governing Hospitalization of the Mentally Ill, and

WHEREAS, it is the desire of the One Hundredth Legislature to enact legislation that will facilitate the orderly hospitalization of the mentally ill within the protections afforded to all citizens by the Constitution of the State of Maine, and the Constitution of the United States, and

WHEREAS, it is important that the Legislature be informed as to the constitutionality of the proposed bill,

ORDERED, that in accordance with the provisions of the Constitution of the State, the Justices of the Supreme Judicial Court are hereby respectfully requested to give the Senate their opinion on the following questions:

**1.**

Do the provisions of Section 171 of Legislative Document 1496 adequately protect the constitutional rights of any person hospitalized as a voluntary patient under Section 169 of said Legislative Document?

**2.**

Do the provisions of Section 185 of Legislative Document 1496 adequately protect the constitutional rights of any person hospitalized as a patient:

(a) Under Section 173 of said Legislative Document,

(b) Under Section 174 of said Legislative Document,

**3.**

Do the provisions of Section 186 of Legislative Document 1496 adequately protect the constitutional rights of any person hospitalized under Section 175 of said Legislative Document?

**4.**

If the other provisions of Legislative Document 1496 are adequate to protect the constitutional rights of any person hospitalized under the provisions of said Legislative Document, may the Legislature provide that the Writ of Habeas Corpus shall not be available to any such person, notwithstanding the provisions of Article I, Section 10, of the Constitution of Maine?

**5.**

If it is necessary that the Writ of Habeas Corpus be at all times available to a person hospitalized, as mentally ill, along with the other statutory provisions for release, or review provided in Legislative Document 1496, would a pa-

tient hospitalized pursuant to Section 175 of said document have a right to apply for a Writ of Habeas Corpus under Section 190 of said Legislative Document, or pursuant to chapter 126 of the Revised Statutes of 1954, even though,

(a) Said patient sought a Writ of Habeas Corpus within three days of his hospitalization under an order issued pursuant to Section 175 — solely on the grounds he was not mentally ill at the time of his application for the Writ?

(b) Said patient sought a Writ of Habeas Corpus within three months of having been denied a re-examination of his order of hospitalization under Section 186, solely on the grounds that he had fully and completely recovered from his mental illness at the time of his application for the Writ?

In Senate Chamber
April 4, 1961
Read and Passed
CHESTER T. WINSLOW,
Secretary

A true copy attest:

CHESTER T. WINSLOW,
Secretary of the Senate

New draft of: S. P. 283, L. D. 884

ONE-HUNDREDTH LEGISLATURE

Legislative Document                                    No. 1496

S. P. 497                              In Senate, March 22, 1961
    Reported by Senator Lord of Cumberland from Committee on Health and Institutional Services. Printed under Joint Rules No. 10.
                CHESTER T. WINSLOW, Secretary
    Presented by Senator Lord of Cumberland.

STATE OF MAINE

IN THE YEAR OF OUR LORD NINETEEN
HUNDRED SIXTY-ONE

AN ACT Governing Hospitalization of the Mentally Ill.

Be it enacted by the People of the State of Maine,
    as follows:

Sec. 1.  R. S., c. 27, §§ 168 - 194, additional.  Chapter 27 of the Revised Statutes is amended by adding 27 new sections to be numbered 168 to 194, to read as follows:

'Hospitalization of the Mentally Ill.

Sec. 168.  Definitions.  Each word or term defined in this section has the meaning indicated in this section for the purposes of sections 168 to 194, unless a different meaning is plainly required by the context.

I.  Department.  "Department" means the Department of Mental Health and Corrections.

II.  Head of hospital.  "Head of hospital" means the individual in charge of a hospital, or his designee.

III. Hospital. "Hospital" means a public or private hospital or institution, or part thereof, equipped to provide in-patient care and treatment for the mentally ill.

IV. Licensed physician. "Licensed physician" means an individual licensed under the laws of the State of Maine to practice medicine or osteopathy and a medical officer of the Government of the United States while in this State in the performance of his official duties.

V. Mentally ill individual. "Mentally ill individual" means an individual having a psychiatric or other disease which substantially impairs his mental health. For the purposes of sections 168 to 194, the term "mentally ill individual" does not include mentally retarded or sociopathic individuals.

VI. Patient. "Patient" means an individual under observation, care or treatment in a hospital pursuant to sections 168 to 194.

### Voluntary Hospitalization.

Sec. 169. Authority to receive voluntary patients. The head of a private hospital may and, the head of a public hospital, subject, except in case of medical emergency, to the availability of suitable accommodations, may admit for observation, diagnosis, care and treatment any individual who is mentally ill or has symptoms of mental illness and who, being 16 years of age or over, applies therefor, exclusive of those persons with pending criminal action.

Sec. 170. Discharge of voluntary patients. The head of the hospital shall discharge any voluntary patient who has recovered or whose hospitalization he determines to be no longer advisable. He may discharge any voluntary patient if to do so would, in the judgment of the head of the hospital, contribute to the most effective use of the hospital in the care and treatment of the mentally ill.

Sec. 171. Right of release on application. A voluntary patient who requests his release or whose release is requested, in writing, by his legal guardian, parent, spouse or adult next of kin shall be released forthwith except that:

I. Patient admitted on own application. If the patient was admitted on his own application and the request for release is made by a person other than the patient, release may be conditioned upon the agreement of the patient thereto; or

II. Head of hospital certifies release unsafe. If the head of the hospital, within 10 days from the receipt of the request, files with the probate court of the county where said hospital is situated or a judge thereof, whether in session or in vacation, a certification that in his opinion the release of the patient would be unsafe for the patient or others, release may be postponed on application for as long as the court or a judge thereof determines to be necessary for the commencement of proceedings for judicial hospitalization, but in no event for more than 10 days.

Notwithstanding any other provision of sections 168 to 194, judicial proceedings for hospitalization shall not be commenced with respect to a voluntary patient unless release of the patient has been requested by himself or the individual who applied for his admission.

Involuntary Hospitalization. Admission Provisions.

Sec. 172. Authority to receive involuntary patients. The head of a private hospital may and the head of a public hospital, subject, except in case of medical emergency, to the availability of suitable accommodations, shall receive therein for observation, diagnosis, care and treatment any individual whose admission is applied for under any of the following procedures:

I. Medical certification, nonjudicial procedure. Hospitalization on medical certification; standard nonjudicial procedure.

II. Medical certification, emergency. Hospitalization on medical certification; emergency procedure.

III. Court order. Hospitalization on court order; judicial procedure.

Sec. 173. Hospitalization on medical certification; standard nonjudicial procedure. Any individual may be admitted to a hospital upon:

I. Application. Written application to the hospital by a friend, relative, spouse or guardian of the individual, a health or public welfare officer, or the head of any institution in which such individual may be; and

II. Certification. Certification by 2 licensed physicians that they have examined the individual and that they are of the opinion that:

A. He is mentally ill, and

B. Because of his illness is likely to injure himself or others if allowed to remain at liberty, or

C. Is in need of care or treatment in a mental hospital, and because of his illness, lacks sufficient insight or capacity to make responsible application therefor.

The certification by the licensed physicians may be made jointly or separately, and may be based on examination conducted jointly or separately. An individual with respect to whom such certification has been issued may not be admitted on the basis thereof at any time after the expiration of 15 days after the date of examination. The head of the hospital admitting the individual shall forthwith make a report thereof to the department.

Such a certificate, if it states a belief that the individual is likely to injure himself or others if allowed to remain at liberty, upon endorsement for such purpose by a judge of any court of record within whose jurisdiction the individual is present, shall authorize any health or police officer to take the individual into custody and transport him to a hospital as designated in the application.

Sec. 174. Hospitalization on medical certification; emergency procedure. Any individual may be admitted to a hospital upon:

I. Application. Written application to the hospital by any health or police officer or any other person stating his belief that the individual is likely to cause injury to himself or others if not immediately restrained, and the grounds for such belief; and

II. Certification. A certification by at least one licensed physician that he has examined the individual and is of the opinion that the individual is mentally ill and, because of his illness, is likely to injure himself or others if not immediately restrained.

An individual with respect to whom such a certificate has been issued may not be admitted on the basis thereof at any time after the expiration of 3 days after the date of examination. The head of the hospital admitting the individual shall forthwith make a report thereof to the department.

Such a certificate, upon endorsement for such purpose by a judge of any municipal court within whose jurisdiction the individual is present, shall authorize any health or police officer to take the individual into custody and transport him to a hospital as designated in the application.

Sec. 175. Hospitalization upon court order; judicial procedure. Proceedings for the involuntary hospitalization of an individual may be commenced by the filing of a written

application with the probate court by a friend, relative, spouse or guardian of the individual, or by a licensed physician, a health or public welfare officer, or the head of any public or private institution in which such individual may be or where he may be found. Any such application shall be accompanied by a certificate of a licensed physician stating that he has examined the individual and is of the opinion that he is mentally ill and should be hospitalized, or a written statement by the applicant that the individual has refused to submit to examination by a licensed physician.

Upon receipt of an application the court shall give notice thereof to the proposed patient, to his legal guardian, if any, and to his spouse, parents and nearest known other relative or friend. If the court has reason to believe that notice would be likely to be injurious to the proposed patient, notice to him may be omitted.

As soon as practicable after notice of the commencement of proceedings is given or it is determined that notice should be omitted, the court shall appoint 2 licensed physicians to examine the proposed patient and report to the court their findings as to the mental condition of the proposed patient and his need for custody, care or treatment in a mental hospital. Said physician shall be compensated as authorized by the court and paid by the department.

The examination shall be held at a hospital or other medical facility, at the home of the proposed patient or at any other suitable place not likely to have a harmful effect on his health. A proposed patient to whom notice of the commencement of proceedings has been omitted shall not be required to submit to an examination against his will, and on the report of the licensed physicians of refusal to submit to an examination, the court shall give notice to the proposed patient as provided under this section and order him to submit to such examination.

If the report of the licensed physicians is to the effect that the proposed patient is not mentally ill, the court may without taking any further action terminate the proceedings and dismiss the application; otherwise, it shall forthwith fix a date for and give notice of a hearing to be held not less than 5 nor more than 15 days from receipt of the report.

The proposed patient, the applicant and all other persons to whom notice is required to be given shall be afforded an opportunity to appear at the hearing, to testify and to present and cross-examine witnesses, and the court may in its discretion receive the testimony of any other person. The proposed patient shall not be required to be present, and all persons not necessary for the conduct of the proceedings shall be excluded, except as the court may direct in its discretion. The hearings shall be conducted in as informal a manner as may be consistent with orderly procedure and in a physical setting not likely to have a harmful effect on the mental health of the proposed patient. The court shall receive all relevant and material evidence which may be offered. An opportunity to be represented by counsel shall be afforded to every proposed patient who is indigent, and if neither he nor others provide counsel, the court shall appoint counsel, who shall be compensated by the department as authorized by the court.

If, upon completion of the hearing and consideration of the record, the court finds that the proposed patient is mentally ill, and because of his illness is likely to injure himself or others if allowed to remain at liberty, or is in need of custody, care or treatment in a mental hospital and, because of his illness, lacks sufficient insight or capacity to make responsible decisions with respect to his hospitalization, it shall order his hospitalization; otherwise, it shall dismiss the proceedings.

Unless otherwise directed by the court, it shall be the responsibility of the sheriff of the county in which the probate court has jurisdiction to assure the carrying out of the order within such period as the court shall specify.

The court is authorized to appoint a special commissioner who shall be a member of the bar of the State to assist in the conduct of hospitalization proceedings. In any case in which the court refers an applicant to the commissioner, the commissioner shall promptly cause the proposed patient to be examined and on the basis thereof shall either recommend dismissal of the application or hold a hearing as provided in this section and make recommendations to the court regarding the hospitalization of the proposed patient. Said commissioner shall be compensated as authorized by the court and paid by the department.

The head of the hospital admitting a patient pursuant to proceedings under this section shall forthwith make a report of such admission to the department.

Sec. 176. Hospitalization by an agency of the United States. If an individual ordered to be hospitalized pursuant to section 175 is eligible for hospital care or treatment by any agency of the United States, the court, upon receipt of a certificate from such agency showing that facilities are available and that the individual is eligible for care or treatment therein, may order him to be placed in the custody of such agency for hospitalization. When any such individual is admitted pursuant to the order of such court to any hospital or institution operated by any agency of the United States within or without the State, he shall be subject to the rules and regulations of such agency. The chief officer of any hospital or institution operated by such agency and in which the individual is so hospitalized shall with respect to such individual be vested with the same powers as the heads of hospitals or the department within this State with

respect to detention, custody, transfer, conditional release or discharge of patients. Jurisdiction is retained in the appropriate courts of this State at any time to inquire into the mental condition of an individual so hospitalized, and to determine the necessity for continuance of his hospitalization, and every order of hospitalization issued pursuant to this section is so conditioned.

Sec. 177. Transfer of mentally ill persons from out of the state institutions. The commissioner may, upon request of a competent authority of a state, or of the District of Columbia, which is not a member of the Interstate Compact on Mental Health, grant authorization for the transfer of a mentally ill patient directly to a Maine state hospital, provided said patient has resided in the State of Maine for a consecutive period of one year during the 3-year period immediately preceding commitment in such other state or the District of Columbia; that said patient is currently confined in a recognized state institution for the care of the mentally ill as the result of proceedings considered legal by that state; that a duly certified copy of the original commitment proceedings and a copy of the patient's case history is supplied; that if, after investigation, the commissioner shall deem such a transfer justifiable; and that all expenses incident to such a transfer be borne by the agency requesting same. When the commissioner has authorized such a transfer, the Superintendent of the State Hospital designated by him shall receive the patient as having been regularly committed to said hospital under section 173.

Sec. 178. Care of mentally ill members of armed forces; status. Any member of the armed forces of the United States, who was a resident of the State at the time of his induction into the service, who shall be determined by a federal board of medical officers to have a mental disease not incurred in line of duty, shall be received at either of the state hospitals for the mentally ill in the discretion of the

commissioner, without formal commitment, upon delivery of such person, together with the findings of such board of medical officers that such person is mentally ill, at the hospital designated by said commissioner.

After delivery of such person at the hospital designated by said commissioner, his status shall be the same as if he had been committed to the hospital under section 173.

Sec. 179. Transportation; temporary detention. Whenever an individual is about to be hospitalized under sections 173, 174 or 176, the sheriff of the county or a state or local police officer shall, arrange for the individual's transportation to the hospital with suitable attendants and by such means as may be suitable for his medical condition. Whenever practicable, the individual to be hospitalized shall be transported to the hospital by one or more of his friends or relatives, or shall be permitted to be accompanied by one or more of his friends or relatives.

Pending his removal to a hospital, a patient taken into custody or ordered to be hospitalized pursuant to sections 168 to 194 may be detained in his home, a licensed foster home or any other suitable facility under such reasonable conditions as the sheriff of the county may fix, but he shall not, except because of and during an extreme emergency, be detained in a nonmedical facility used for the detention of individuals charged with or convicted of penal offenses. The sheriff of the county or his properly accredited assistant shall take such reasonable measures, including provision of medical care, as may be necessary to assure proper care of an individual temporarily detained pursuant to this section.

Involuntary Hospitalization. Post-Admission Provisions.

Sec. 180. Notice of hospitalization. Whenever a patient has been admitted to a hospital pursuant to sections 173 or 174 on the application of any person other than the patient's

legal guardian, spouse or next of kin, the head of the hospital shall notify the patient's legal guardian, spouse or next of kin, if known.

Sec. 181.  Medical examination of newly admitted patients.  Every patient admitted pursuant to sections 173, 174 or 175 shall be examined as soon as practicable after his admission.

The head of the hospital shall arrange for examination by a staff physician of every patient hospitalized pursuant to section 174.  If such an examination is not held within 3 days after the day of admission, or if a staff physician fails or refuses after such examination to certify that in his opinion the patient is mentally ill and is likely to injure himself or others if allowed to remain at liberty, the patient shall be immediately discharged.

Sec. 182.  Transfer of patients.  The department may transfer, or authorize the transfer of, a patient from one hospital to another either within or out of state if the department determines that it would be consistent with the medical needs of the patient to do so.  Whenever a patient is transferred, written notice thereof shall be given to his legal guardian, parents and spouse, or, if none be known, his nearest known relative or friend.  In all such transfers, due consideration shall be given to the relationship of the patient to his family, legal guardian or friends, so as to maintain relationships and encourage visits beneficial to the patient.

Upon receipt of a certificate of an agency of the United States that facilities are available for the care or treatment of any individual heretofore ordered hospitalized pursuant to law or hereafter pursuant to section 175 in any hospital for care or treatment of the mentally ill and that such individual is eligible for care or treatment in a hospital or institution of such agency, the hospital may cause his transfer

to such agency of the United States for hospitalization. Upon effecting any such transfer, the court ordering hospitalization, the legal guardian, spouse and parents, or if none be known, his nearest known relative or friend and the department shall be notified thereof by the hospital. No person shall be transferred to an agency of the United States if he be confined pursuant to conviction of any felony or misdemeanor or if he has been acquitted of the charge solely on the ground of mental illness, unless prior to transfer the court originally ordering confinement of such person shall enter an order for such transfer after appropriate motion and hearing. Any person transferred as provided in this section to an agency of the United States shall be deemed to be hospitalized by such agency pursuant to the original order of hospitalization.

Sec. 183. Discharge. The head of a hospital shall as frequently as practicable, but not less often than every 12 months, examine or cause to be examined every patient and whenever he determines that the conditions justifying involuntary hospitalization no longer obtain, discharge the patient and immediately make a report thereof to the department.

Sec. 184. Convalescent status; rehospitalization. The head of a hospital may release an improved patient on convalescent status when he believes that such release is in the best interests of the patient. Release on convalescent status may include provisions for continuing responsibility to and by the hospital, including a plan of treatment on an outpatient or nonhospital patient basis. Prior to the end of a year on convalescent status, and not less frequently than annually thereafter, the head of the hospital shall reexamine the facts relating to the hospitalization of the patient on convalescent status and, if he determines that in view of the condition of the patient convalescent status is no longer necessary, he shall discharge the patient and make a

report thereof to the department. Convalescent status of voluntary patients must be terminated within 10 days after receiving from the patient a request for discharge from convalescent status.

Prior to such discharge, the head of the hospital from which the patient is given convalescent status may at any time readmit the patient. If there is reason to believe that it is to the best interests of the patient who had been involuntarily admitted to be rehospitalized, the department or the head of the hospital may issue an order for the immediate rehospitalization of the patient. Such an order, if not voluntarily complied with, shall, upon the endorsement by a judge of a municipal court of the county in which the patient is resident or present, authorize any health or police officer to take the patient into custody and transport him to the hospital, or if the order is issued by the department to a hospital designated by it.

Sec. 185. Right to release; application for judicial determination. Any patient hospitalized under section 173 or 174 who requests to be released or whose release is requested in writing by his legal guardian, spouse or adult next of kin shall be released within 10 days after receipt of the request except that, upon application to the probate court or a judge thereof, whether in session or in vacation, supported by a certification by the head of the hospital that in his opinion such release would be unsafe for the patient or for others, release may be postponed for such period not to exceed 10 days as the court or a judge thereof may determine to be necessary for the commencement of proceedings for a judicial determination pursuant to section 175.

The head of the hospital shall inform involuntary patients in writing, on admission, of their right to release as provided in this section and shall provide reasonable arrangements for making and presenting requests for release.

Sec. 186. Petition for re-examination of order or hospitalization. Any patient hospitalized pursuant to section 175 shall be entitled to a re-examination of the order for his hospitalization on his own petition, or that of his legal guardian, parent, spouse, relative or friend, to the probate court of the county in which he resides or is detained. Upon receipt of the petition, the court shall conduct or cause to be conducted by a special commissioner proceedings in accordance with such section 175, except that such proceedings shall not be required to be conducted if the petition is filed sooner than 6 months after the issuance of the order of hospitalization or sooner than one year after the filing of a previous petition under this section.

### Provisions Applicable to Patients Generally.

Sec. 187. Right to humane care and treatment. Every patient shall be entitled to humane care and treatment and, to the extent that facilities, equipment and personnel are available, to medical care and treatment in accordance with the highest standards accepted in medical practice.

Sec. 188. Mechanical restraints and seclusion. Restraint, including any mechanical means of restricting movement, and seclusion, including isolation by means of doors which cannot be opened by the patient, shall not be applied to a patient unless it is determined by the head of the hospital or his designee to be required by the medical needs of the patient. Every use of mechanical restraint or seclusion and the reasons therefor shall be recorded and available for inspection. The limitation of the use of seclusion by this section shall not apply to maximum security installations.

Sec. 189. Right to communication and visitation. Every patient shall be entitled:

I. Mail. To communicate by sealed envelopes with the department, clergyman or his attorney and with the court,

if any, which ordered his hospitalization, and to communicate by mail in accordance with the regulations of the hospital;

II. Visitors. To receive visitors unless definitely contraindicated by his medical condition; except, however, he may be visited by his clergyman or his attorney at any reasonable time.

Sec. 190. Writ of habeas corpus. Any individual detained pursuant to sections 168 to 194 shall be entitled to the writ of habeas corpus upon proper petition by himself or a friend to any court generally empowered to issue the writ of habeas corpus in the county in which he is detained.

Sec. 191. Disclosure of information. All certificates, applications, records and reports made for the purpose of sections 168 to 194 and directly or indirectly identifying a patient or former patient or an individual whose hospitalization has been sought under sections 168 to 194 shall be kept confidential and shall not be disclosed by any person except insofar:

I. Consent of individual. As the individual identified or his legal guardian, if any, or, if he is a minor, his parent or legal guardian, shall consent, or

II. Necessity. As disclosure may be necessary to carry out any of the provisions of sections 168 to 194, or

III. Court directive. As a court may direct upon its determination that disclosure is necessary for the conduct of proceedings before it or that failure to make such disclosure would be contrary to the public interest.

Nothing in this section shall preclude disclosure, upon proper inquiry, of information as to his current medical condition, to any members of the family of a patient or to his relatives or friends or to other hospitals or accredited so-

cial agencies; nor shall this section affect the public-record status of the court docket, so-called.

Any person willfully violating any provision of this section shall be guilty of a misdemeanor and shall be punished by a fine of not more than $500 and by imprisonment for not more than one year.

Sec. 192. Detention pending judicial determination. Notwithstanding any other provisions of sections 168 to 194, no patient with respect to whom proceedings for judicial hospitalization have been commenced shall be released or discharged during the pendency of such proceedings unless ordered by the Superior Court or a judge thereof upon the application of the patient, or his legal guardian, parent, spouse or next of kin, or upon the report of the head of the hospital that the patient may be discharged with safety.

Sec. 193. Additional powers of the department. In addition to the specific authority granted by other provisions of sections 168 to 194, the department shall have authority to prescribe the form of applications, records, reports and medical certificates provided for under sections 168 to 194 and the information required to be contained therein; to require reports from the head of any hospital relating to the admission, examination, diagnosis, release or discharge of any patient; to visit each hospital regularly to review the commitment procedures of all new patients admitted between visits; to investigate by personal visit complaints made by any patient or by any person on behalf of a patient; and to adopt such rules and regulations not inconsistent with sections 168 to 194 as it may find to be reasonably necessary for proper and efficient hospitalization of the mentally ill.

Sec. 194. Unwarranted hospitalization or denial of rights; penalties. Any person who willfully causes, or conspires with or assists another to cause, the unwarranted

hospitalization of any individual under sections 168 to 194, or the denial to any individual of any of the rights accorded to him under said sections, shall be punished by a fine of not less than $100 nor more than $1,000, or by imprisonment for not less than one year nor more than 5 years, or by both.'

**Sec. 2. R. S., c. 10, § 22, sub-§ VIII, amended.** Subsection VIII of section 22 of chapter 10 of the Revised Statutes is amended to read as follows:

'VIII. **Insane person.** The words "insane person" may include an idiotic, non compos, lunatic or distracted person.~~; but in reference to idiotic or non compos persons this rule does not apply to sections 10, 13, 96 to 112, inclusive, 130 to 133, inclusive and 135 to 147, inclusive, of chapter 27.~~ **This rule does not apply to chapter 27.**'

**Sec. 3. R. S., c. 25, §§ 24-27, repealed.** Sections 24 to 27 of chapter 25 of the Revised Statutes are repealed.

**Sec. 4. R. S., c. 25, § 29, amended.** Section 29 of chapter 25 of the Revised Statutes is amended to read as follows:

'**Sec. 29. License revoked after hearing.** Upon the failure of any superintendent or manager of such licensed hospital or house to comply with any of the provisions of ~~the 7 preceding~~ **sections 22, 23 and 28 and of the provisions of chapter 27, sections 169 to 176 and sections 181 to 194,** the commissioner may order a hearing to be held and notify in writing said superintendent or manager of such hearing, by 7 days' notice, to be held at the State House at Augusta, and if it shall appear to the commissioner that ~~the provisions of~~ said sections have not been complied with, he may revoke the license of said hospital or house.'

**Sec. 5. R. S., c. 27, § 13, amended.** The last sentence of the 2nd paragraph of section 13 of chapter 27 of the Revised Statutes is amended to read as follows:

'If prior to the expiration of the original sentence it is the opinion of the head of the institution which has charge of the patient that the patient should remain in the custody of the institution after the expiration of such sentence, the patient may be recommitted to either of the state hospitals upon complaint of the head of the institution which has charge of the patient under ~~the provisions of~~ sections ~~110 and 111~~ 169, 172, 173 or 175; or to the Pineland Hospital and Training Center under ~~the provisions of~~ section 145.'

**Sec. 6. R. S., c. 27, §§ 100-117, repealed.** Sections 100 to 113, as amended, section 113-A, as enacted by chapter 195 of the public laws of 1957, and sections 114 to 117, as amended, of chapter 27 of the Revised Statutes, are repealed.

**Sec. 7. R. S., c. 27, § 119, amended.** The 3rd sentence of section 119 of chapter 27 of the Revised Statutes is repealed as follows:

'~~The expense of such transfer shall be paid as provided in section 102.~~'

**Sec. 8. R. S., c. 27, § 124, amended.** The last sentence of section 124 of chapter 27 of the Revised Statutes is amended to read as follows:

'A certified copy of the certificate signed by the prison physician shall accompany said order of commitment made hereunder, and said judge shall keep a record of his doings ~~and furnish a copy to any interested person requiring and paying for it.~~'

**Sec. 9. R. S., c. 27, § 129, amended.** The last sentence of section 129 of chapter 27 of the Revised Statutes is amended to read as follows:

'Persons committed by a Justice of the Superior Court before final conviction, or after conviction and before sentence, whether originally committed or subsequently removed

thereto, and insane convicts after the expiration of their sentences, shall be supported while in the ~~insane~~ hospital for the mentally ill in the manner provided by law ~~in the case of persons committed by municipal officers, and the provisions of sections 137 to 139, inclusive, shall apply to such cases.~~'

**Sec. 10. R. S., c. 27, §§ 131-142, repealed.** Sections 131 to 142 of chapter 27 of the Revised Statutes are repealed.

### ANSWERS OF THE JUSTICES

To the Honorable Senate of the State of Maine:

In compliance with the provisions of Section 3 of Article VI of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit the following answers to the questions propounded on April 4, 1961.

L. D. 1496, entitled "An Act Governing Hospitalization of the Mentally Ill," is designed, as the Senate order states, to "facilitate the orderly hospitalization of the mentally ill within the protections afforded to all citizens" by the State and Federal Constitutions. The bill provides a new and comprehensive law in substitution for statutes relating to commitment of the insane. It is plainly based upon a "Draft Act Governing Hospitalization of the Mentally Ill" prepared in 1951 in the Federal Security Agency by the National Institute of Mental Health, Public Health Service and the Office of the General Counsel. Sections 168 through 194 of L. D. 1496 follow closely the Draft Act without changes of constitutional significance.

In the foreword of the Draft Act we read, in words equally applicable to L. D. 1496:

> "The general objectives of the Draft Act were stated in 1869 by Isaac Ray:
>
> "In the first place, the law should put no hindrance in the way to the prompt use of those instrumen-

talities which are regarded as most effectual in promoting the comfort and restoration of the patient. Secondly, it should spare all unnecessary exposure of private troubles, and all unnecessary conflict with popular prejudices. Thirdly, it should protect individuals from wrongful imprisonment. It would be objection enough to any legal provision, that it failed to secure these objects, in the completest possible manner."

With these general considerations in mind we turn to the questions.

QUESTION (1) : Do the provisions of Section 171 of Legislative Document 1496 adequately protect the constitutional rights of any person hospitalized as a voluntary patient under Section 169 of said Legislative Document?

ANSWER: We answer in the affirmative.

The restrictions on release in our opinion are reasonable. The commentary on Section 4 of the Draft Act (Sec. 171 of L. D. 1496) is apt.

"This limitation on release may appear inconsistent with the objective of encouraging voluntary hospitalization by assuring prospective patients and their families that admission to the hospital is subject to revocation. However, if the condition of the person is such that it is unsafe for him to go unrestrained, the necessity of steps to secure his detention and treatment is the same whether he is outside or inside the hospital at the time the condition develops."

QUESTION (2) (a), (b) : Do the provisions of Section 185 of Legislative Document 1496 adequately protect the constitutional rights of any person hospitalized as a patient:

(a)    Under Section 173 of said Legislative Document.

(b)    Under Section 174 of said Legislative Document?

ANSWER: We answer in the affirmative.

Section 185 provides, in our opinion, a prompt and effective method for institution of proceedings for release by the person or persons acting in his behalf. The limitations on release are substantially like those established in Section 171 for the discharge of the voluntary patient.

In 1955, in an advisory opinion in 151 Me. 24, at 34, to the Senate, the Justices were unanimously of the view that a provision substantially like Section 185 would be constitutional. We reach a like conclusion.

QUESTION (3): Do the provisions of Section 186 of Legislative Document 1496 adequately protect the constitutional rights of any person hospitalized under Section 175 of said Legislative Document?

ANSWER: We answer in the affirmative.

Section 186 is applicable only to the patient who is hospitalized by order of the Probate Court under Section 175. The limitations upon the right to a re-examination of the Court order are not unconstitutional.

The Court may entertain a petition for re-examination at any time. Section 186 does no more than protect the Court against the required re-examination of its order until after a time for a change in the patient's condition. There are many provisions in L. D. 1496 for the protection of the patient. For example: Examination of the patient "as frequently as practicable, but not less often than every 12 months, .. " and discharge by the head of the hospital (Sec. 183); "Right to communication and visitation" (Sec. 189); "Unwarranted hospitalization or denial of rights; penalties" (Sec. 194).

Further, as we shall later discuss in more detail, the writ of habeas corpus is at all times available to the patient.

QUESTION (4): If the other provisions of Legislative Document 1496 are adequate to protect the constitutional

rights of any person hospitalized under the provisions of said Legislative Document, may the Legislature provide that the Writ of Habeas Corpus shall not be available to any such person, notwithstanding the provisions of Article I, Section 10, of the Constitution of Maine?

ANSWER: We answer in the negative.

Our Constitution reads: "And the privilege of the writ of *habeas corpus* shall not be suspended, unless when in cases of rebellion or invasion the public safety may require it." Art. I, Sec. 10.

The "great writ of liberty" must not be destroyed or weakened. *Stuart* v. *Smith,* 101 Me. 397. The writ of habeas corpus must remain available at all times to any person hospitalized under an Act such as L. D. 1496.

In consideration of Question (4), our attention has been directed specifically to Section 190 relating to habeas corpus, and Section 192 providing for detention pending judicial determination. On its face as now worded, Section 192, in operating *notwithstanding* Section 190, unconstitutionally limits and abridges the right to habeas corpus.

There is nothing objectionable, in our view, with Section 192, except in connection with Section 190. Indeed, in the 1955 advisory opinion a provision substantially like Section 192 was considered constitutional. There was, however, no provision such as the present Section 190 relating to habeas corpus under review.

The difficulty may be corrected readily by adding at the end of Section 192, the words "or upon writ of habeas corpus under Section 190." Section 192 would then no longer limit the availability of the "great writ."

Comparison with other provisions of L. D. 1496 also suggests the possibility of inadvertent reference in Section 192

to "Superior Court," when the court proceedings are in the Probate Court.

QUESTION (5) (a), (b): If it is necessary that the Writ of Habeas Corpus be at all times available to a person hospitalized, as mentally ill, along with the other statutory provisions for release, or review provided in Legislative Document 1496, would a patient hospitalized pursuant to Section 175 of said document have a right to apply for a Writ of Habeas Corpus under Section 190 of said Legislative Document, or pursuant to chapter 126 of the Revised Statutes of 1954, even though,

(a) Said patient sought a Writ of Habeas Corpus within three days of his hospitalization under an order issued pursuant to Section 175 — solely on the grounds he was not mentally ill at the time of his application for the Writ?

(b) Said patient sought a Writ of Habeas Corpus within three months of having been denied a re-examination of his order of hospitalization under Section 186, solely on the grounds that he had fully and completely recovered from his mental illness at the time of his application for the Writ?

ANSWER: We answer in the affirmative.

As we have said, the writ of habeas corpus must always be available.

Dated at Augusta, Maine, this 21st day of April, 1961.

Respectfully submitted:

ROBERT B. WILLIAMSON
DONALD W. WEBBER
WALTER M. TAPLEY, JR.
FRANCIS W. SULLIVAN
F. HAROLD DUBORD
CECIL J. SIDDALL